UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(GREENBELT)
Civil Division

| | | |
|---|---|---|
| MAKIA STAVES<br>9510 Silver Fox Turn<br>Clinton, MD 20735 | )<br>)<br>)<br>) | |
|      Plaintiff, | )<br>) | |
| v. | )<br>)<br>) | Case No.: _____ |
| ANGELA D. ALSOBROOKS, COUNTY<br>EXECUTIVE, AND COUNTY COUNCIL<br>FOR PRINCE GEORGE'S COUNTY,<br>MARYLAND<br>Serve on: | )<br>)<br>)<br>)<br>) | |
|      Angela D. Alsobrooks,<br>     County Executive<br>     1301 McCormick Drive, Suite 4000<br>     Largo, Maryland 20774 | )<br>)<br>)<br>)<br>) | |
|      and | )<br>) | |
|      Prince George's County Council<br>     County Administration Building<br>     14741 Governor Oden Bowie Drive<br>     Upper Marlboro, Maryland 20772 | )<br>)<br>)<br>)<br>) | |
| and | )<br>) | |
| PRINCE GEORGE'S COUNTY<br>BOARD OF EDUCATION<br>Sasscer Administration Building<br>14201 School Lane<br>Upper Marlboro, Maryland 20772<br>Prince George's County | )<br>)<br>)<br>)<br>)<br>) | |
| and | )<br>) | |
| PRINCE GEORGE'S COUNTY<br>PUBLIC SCHOOLS<br>Sasscer Administration Building<br>14201 School Lane<br>Upper Marlboro, Maryland 20772 | )<br>)<br>)<br>)<br>) | |

Prince George's County            )
                                  )
and                               )
                                  )
DR. MONICA GOLDSON, in her        )
Official Capacity as Chief Executive Officer )
Prince George's County Public Schools  )
Sasscer Administration Building   )
14201 School Lane                 )
Upper Marlboro, Maryland 20772    )
                                  )
        Defendants.               )
_____ )

## COMPLAINT
### Employment Discrimination

Makia Staves ("Plaintiff"), through her attorneys, hereby states as follows:

### NATURE OF THE CASE

1.      Plaintiff Makia Staves, a woman who is a certified Athletic Director, Physical

Educator, and Athletic Coach, brings this civil rights action against Prince George's County

Council, County Executive Angela Alsobrooks in her official capacity, Prince George's County

Public Schools ("PGCPS"), Prince George's County Board of Education, and PGCPS CEO

Monica Goldson in her official capacity (collectively, "Defendants") for the discrimination she

suffered on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§2000e, *et seq.* ("Title VII"); Title IX of the Education Amendments of 1972, 20 U.S.C.

§§ 1681, *et seq.* ("Title IX"); the Maryland Fair Employment Practices Act, Md. Code Ann.,

State Gov't ¶ 20-606, *et seq.* ("Maryland FEPA"); the Prince George's County, Md., Code §§ 2-

186(a)(3), 2-222, *et seq.* ("PG Code"); 42 U.S.C. § 1981a; and, pursuant to 42 U.S.C. § 1983, the

Fourteenth Amendment of the United States Constitution, U.S. Const. amend. XIV, § 1.

2.      Makia Staves is an Athletic Director, Physical Educator, Coach, and an African-American woman who was twice passed over for a coveted high school basketball Head Coach position in PGCPS because she is not a man.

3.      Title VII, Title IX, the Maryland FEPA, the Prince George's County Code, and the Equal Protection Clause all prohibit discrimination on the basis of sex.

4.      This action seeks declaratory, injunctive and equitable relief, compensatory and liquidated damages, and attorney's fees and costs arising out of the Defendants' unlawful disparate treatment of Ms. Staves which caused her to suffer adverse employment actions by Defendants on the basis of her gender.

5.      During her employment with PGCPS, Plaintiff endured systematic discrimination based on her gender.  On or about November 2017, and again in May 2018, Plaintiff was passed over for a Head Girls' Basketball Coach position at C.H. Flowers High School in PGCPS because of her gender. Both times, PGCPS selected a clearly and indisputably less-qualified and less-credentialed man instead of Ms. Staves.

6.      As a result of the discrimination that Ms. Staves experienced in her place of employment, Ms. Staves has suffered past and future pecuniary loss, loss of employment and future employment opportunities, loss of wages and benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life at the hands of Defendants.

**7.**      Accordingly, Plaintiff brings this action against Defendants in order to remedy the harms they caused her and to ensure that Defendants can no longer unlawfully discriminate against female basketball head coaches, like her, on the basis of their sex. Specifically, Ms. Staves seeks redress for the injuries she suffered due to Defendants' discriminatory behavior

towards her on the basis of her sex that occurred at C.H. Flowers High School ("Flowers H.S.") in Prince George's County.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343(a) because the matters in controversy arise under the laws of the Constitution of the United States, including Title VII, Title IX, 42 U.S.C. § 1981a, and 42 U.S.C § 1983, all of which are laws providing for the protection of civil rights.

9.     This Court also has supplemental jurisdiction over Defendants with respect to Plaintiff's state law and county code claims pursuant to 28 U.S.C. § 1367 because those claims arise from a common nucleus of operative facts and are so related to the claims in the action within the original jurisdiction of the Court that they form part of the same case or controversy.

10.    This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202.

11.    Venue lies in this judicial district pursuant to 28 U.S.C. §§2000e-5(f), 1391(a)(1), (a)(2), because the Defendants' discriminatory and unlawful conduct took place in Prince George's County, Maryland.

## PARTIES

12.    Plaintiff is a resident of Prince George's County, Maryland, and at all relevant times was employed by Defendant Prince George's County Public Schools ("PGCPS"), Prince George's County Board of Education, and/or the Prince George's County government as a certified Athletic Director, Physical Educator, and/or Athletic Coach. Plaintiff is an African-American woman.

13.     Plaintiff, at all relevant times, was Defendants' "employee" within the meaning of 42 U.S.C. § 2000e(f), Md. Code Ann., State Gov't § 20-601(c)(1), and PG County Code § 2-186.

14.     Defendant PGCPS is a public-school district in the State of Maryland, and has its offices located at 14201 School Lane, Upper Marlboro, MD 20772.

15.     Defendant Prince George's County Board of Education is the official policymaking and oversight body for Defendant PGCPS, and has its offices located at 14201 School Lane, Upper Marlboro, MD 20772.

16.     Defendants are "employer[s]" within the meaning of 42 U.S.C. § 2000e(b), Md. Code Ann., State Gov't § 20-601(d), and PG County Code § 2-186(a)(5). Defendants are also an "educational institution" within the meaning of 20 U.S.C. § 1681(c).

17.     Charles Herbert Flowers High School ("Flowers H.S.") is a public high school within the Defendants' school district.

18.     Defendant Monica Goldson was the acting Chief Executive Officer for Prince George's County Public Schools at the times relevant to the incident. Defendant Goldson is now the official Chief Executive Officer for Prince George's County Public Schools. Her offices are located at 14201 School Lane, Upper Marlboro, MD 20772.

19.     Defendant Angela D. Alsobrooks, County Executive for Prince Georges County, together with the Prince George's County Council collectively constitute the government of Prince George's County, Maryland. At all times relevant to the complaint, the Prince George's County Government was Plaintiff's employer.

## ADMINISTRATIVE EXHAUSTION

20.     On or about March 20, 2018, as the school administration and union ignored her attempts to remedy the discrimination, Ms. Staves engaged in reported the discriminatory conduct to Amana Simmons, Esq., a designated EEO advisor for PGCPS.

21.     Ms. Staves then filed a Charge of Discrimination with the federal Equal Employment and Opportunity Commission ("EEOC") on June 19, 2018. The EEOC recognized this discriminatory treatment on the part of the administration and staff on May 2, 2019, when, after an extensive and thorough investigation, it issued a Notice of Right to Sue, finding that there was a reasonable cause to believe that Ms. Staves had been subject to unlawful treatment based on her sex and gender in violation of Title VII.

22.     On May 6 or 7, 2019, Plaintiff received via U.S. Mail the Notice of Right to Sue dated May 2, 2019, from the EEOC.

## FACTS

23.     Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs as fully set forth herein.

### Plaintiff's Professional Background and Qualifications

24.     Plaintiff Makia Staves is an African-American female.

25.     Plaintiff has been employed by Defendants for over thirteen years as a Physical Educator, Girls' Basketball Assistant Head Coach, Girls' Basketball Head Coach, and Athletic Director.

26.     At all relevant times, Plaintiff was a loyal employee who reported to work on time and professionally carried out her duties. To date, Plaintiff has never received any disciplinary actions, write-ups, or warnings while working for the Defendants.

27.     Prior to becoming an employee of the Defendants, Plaintiff was the Assistant Women's Basketball Coach and Director of Basketball Operations at the college level at the University of North Carolina Asheville.

28.     On or about August 2006 until March 2014, Plaintiff worked at Flowers H.S. as a Junior Varsity Head Coach and Assistant Girls' Basketball Coach, while also working as a Physical Educator within the Defendants' school system.

29.     On July 14, 2009, and at all relevant times hereto, Plaintiff obtained and has maintained her Advanced Professional Certification ("APC") to be a Certified Physical Educator. Plaintiff underwent rigorous coursework, time, and cost to become an APC certified educator in the State of Maryland.

30.     In December 2012, Plaintiff graduated with her Master of Arts in Educational Administration.

31.     At all times relevant hereto, Plaintiff has been, and still remains an employee of the Defendants.

**Prince George's County Public School System**

32.     PGCPS system consists of 207 schools and has an approximate enrollment, as of July 2019, of 132,667 students. There are 210 schools in the system: 118 elementary schools, 24 middle schools, 31 high schools, 14 academies and K-8 schools, 11 special centers, and 12 charter schools. Thirty-one (31) of these 210 schools are magnet schools.[1] Within the

---

[1] A magnet school is defined as a public school offering special instruction and/or programs not available elsewhere and are designed to attract a more diverse student body from throughout the school district. Magnet schools draw students who excel in a particular subject area or athletic ability that match the programs offered at that magnet school to foster students' particular interest(s) or ability(ies) and encourage achievement. A fundamental difference between these schools and other public schools is that magnet schools receive additional funding to maintain their specialized programs.

Defendants' school system, twenty-four (24) high schools participate in interscholastic girls' basketball athletic competitions.

33.     Coaching positions in the Defendants' school system are often an appointment that is contractual in nature, part-time and seasonal. Educators within the Defendants' school system often hold these positions in addition to their full-time teaching positions, whether located in the same school as the coaching position or elsewhere.

34.     Maryland Public Secondary Schools Athletic Association ("MPSSAA") is the association that oversees public high school sporting contests in the state of Maryland. The MPSSAA designates public high schools as "1A," "2A," "3A," and "4A," based on enrollment numbers, with "1A" being the smallest sized schools and "4A" being the largest. MPSSAA arrange schools by these classifications to ensure that schools compete on a regular basis with other schools in the geographic area of a similar size. "4A" schools are considered the "top 25% based on enrollment." For this reason, head coaching positions at "4A" magnet schools with specialized athletic programs are regarded as far more competitive and desirable than head coaching positions at other public schools within Prince George's County.

35.     Flowers H.S. is a "4A" magnet public school serving approximately 2,000 students. Due to its classification and size, Flowers H.S. has the ability to attract and retain the most competitive athletes from across Prince George's County.

36.     During the course of her employment as a Junior Varsity Girls' Basketball Coach and Assistant Head Coach at Flowers H.S., Plaintiff was repeatedly told by her supervisors and administrators that to become a Head Coach within the Defendants' school district, she must obtain her Advanced Professional Certificate.

37.     APC certifications are the highest tier of certifications available to teachers in the State of Maryland.

**Defendants' Discriminatory Acts**

38.     The vast majority of Head Girls' Basketball Coaches within the Defendants' school district are male. As of 2016, out of 24 available Head Coaching positions for Girls' Basketball in PGCPS, Defendants employed only four female Head Girls' Basketball Coaches including Plaintiff. As of 2019, only five Head Coaches are female out of 24 Head Girls' Basketball Coaches in PGCPS.

39.     The discriminatory atmosphere of the workplace was pervasive. It was common practice for the female coaches to hold Junior Varsity or Assistant Head Coach positions, while the male employees held Varsity or Head Coaching positions.

40.     Beginning in 2014, Plaintiff began to experience gender discrimination in the workplace. Specifically, Plaintiff was verbally promised a promotion to the Head Coaching position at Flowers H.S. by the departing Head Coach. Despite her excellent credentials and eight years of prior work experience at Flowers H.S. as the Girls' Junior Varsity ("JV") Basketball Head Coach and Assistant Varsity Basketball Coach, Plaintiff was passed over for the position for a lesser qualified male coach named Roderick Hairston.

41.     Upon information and belief, Coach Hairston was not an APC certified educator at all relevant times.

42.     Upon information and belief, Coach Hairston did not have a Master's degree at all relevant times.

43.     Due to her dissatisfaction with her treatment at Flowers H.S., Plaintiff resigned as the JV Basketball Coach and Assistant Head Coach on or about March 2014. Plaintiff

complained via email dated July 14, 2014 to Flowers H.S. Principal Gorman Brown and Athletic Director Carlyle Rose of the Defendants and received no response.

44.     After Plaintiff filed the above complaint, Defendants continued to discriminate against her based on her gender and also engaged in retaliation.

45.     Defendants continued in its practice of reserving Head Coaching positions for males. The conduct is systemic and insidious.

46.     As a result of her dissatisfaction with her treatment at Flowers H.S., Plaintiff instead sought and received a Head Coaching position at Riverdale Baptist School (in addition to her position as a Certified Physical Educator for the Defendants) for the 2014-2015 and 2015-2016 school years. Riverdale Baptist School is a private school located in Largo, Maryland; its high school Girls' Basketball team consistently ranks as the best Girls' Basketball team amongst all independent (i.e. private) high schools in the State of Maryland.

47.     On or about July 2017, Plaintiff learned that the Head Coaching position at Flowers H.S. was once again vacant. Coach Hairston had been placed on a one-year suspension from coaching for violating Defendants' policies governing out-of-season practice restrictions. Defendants' policies were in place to comply with Maryland state and Prince George's County rules restricting coaching or instruction out-of-season.

48.     With that knowledge, Plaintiff emailed the Athletic Director, Carlyle Rose, and Principal, Gorman Brown, at Flowers H.S. on July 25, 2017, inquiring about the open position. She never received a response.

49.     On or about September or October 2017, the Head Girls' Basketball Coach vacancy was published on Defendant's website with a deadline of October 3, 2017. Plaintiff properly and timely applied.

50.     Several weeks after the close of the vacancy, Plaintiff emailed Mr. Rose and Mr. Brown inquiring about the status of her application, the head coaching vacancy, and the interview process. She received no response. On October 30, 2017, Plaintiff again followed up via email, this time adding three additional recipients of the Defendant to the email, in addition to Athletic Director, Carlyle Rose. It was only after Plaintiffs' persistent emails that Mr. Rose finally responded to Plaintiff with an offer for an interview to be scheduled either the following day (Tuesday) or the next (Wednesday).

51.     After pushing for the interview, Plaintiff finally interviewed with the Defendants for the Head Coaching position at Flowers H.S. at 8:30 a.m. on Wednesday, November 1, 2017.

52.     Despite her excellent credentials and APC certification, Defendants deliberately refused to promote her to Head Coach at a "4A" magnet school. In November 2017, Plaintiff was passed over for the Head Coaching position at Flowers H.S. for a lesser-qualified, retired, and uncertified male coach, Walter Clark, as the Head Coach for Flowers H.S.

53.     Plaintiff, on the other hand, was a Certified Educator and Head Coach already employed within the PGCPS system. Therefore, she was entitled to an interview and primary consideration for the Head Coaching position at Flowers H.S.

54.     Defendants' selection of the uncertified, retired male for the Head Coach position at Flowers H.S. in November 2017 was based upon factors other than lawful, objective criterion. Defendants deliberately solicited and/or preselected the uncertified male for the position.

55.     Defendants' selection of the uncertified male for the Head Coach position at Flowers H.S. in November 2017 was based upon unlawful discrimination (gender). Defendants deliberately solicited and/or preselected the uncertified male for the position.

56.     Defendants have enacted policies that include prohibitions against discrimination based upon gender. Defendants' Board of Education Policy No. 104 states in pertinent part that: "Title IX requires educational institutions to maintain policies, practices, and programs that do not discriminate against anyone based on sex. Under this law, males and females are expected to receive fair and equal treatment in all arenas of public schooling . . . [including] athletics."

57.     Defendants' Hiring Procedures for Employing Coaches requires that "[c]ertified candidates must be interviewed and considered first. A justification must be submitted to and approved by Human Resources whenever a certified candidate is not recommended. Non-certified candidates may not be contacted or interviewed until the Coordinating Supervisor of Human Resources or his/her designee gives written approval to do so."

58.     In violation of their own policies, Defendants made personnel actions, as they pertain to Plaintiff, that were based upon unlawful factors or considerations, including gender. Defendants deliberately solicited and/or preselected uncertified males for promotions and promotional opportunities.

59.     In violation of said policies, Defendants made personnel actions, as they pertain to Plaintiff, based upon unlawful factors or considerations, including gender and pre-selection.

60.     In the event that Plaintiff was not recommended for the Head Coaching position at Flowers H.S. at this time, Defendants would have been required to submit a justification to the Defendants' Human Resources Department *and* obtain approval, per their hiring procedure policy.

61.     Upon information and belief, no requisite justification was ever submitted to or approved by Defendants' Human Resources Department.

62.     Plaintiff was denied promotions to Head Coaching positions while males, with less experience and credentials than Plaintiff, were promoted to Head Coaching positions and/or were offered and accepted employment as temporary or contract Head Coaches.

63.     When Plaintiff learned that an uncertified, retired male coach was selected to fill the Head Coaching position for which she interviewed in direct violation of Defendants' hiring procedures, she wrote to the Union and Labor Relations departments at the Prince George's County Educators' Association ("PGCEA") on November 28, 2017 via email to report the Defendants' discriminatory activity. She received no response. When Plaintiff followed up with the PGCEA on or about January 31, 2018, regarding her previously reported complaint, she was told that the PGCEA does not handle these types of matters.

64.     As time passed, Plaintiff's efforts to voice her concern about her treatment to supervisors and management of the Defendants continued to be ignored.

65.     In April 2018, the position of Head Coach at Flowers H.S. was again announced on the Defendants' website. After Plaintiff properly and timely submitted her application, Plaintiff participated in the interview process on May 8, 2018.

66.     Prior to submission of her application, Plaintiff had met with the Defendants' EEO advisor on or about March 20, 2018 to report the discriminatory treatment she had received in November 2017.

67.     Defendants' interview of PLAINTIFF on Plaintiff May 8, 2018 was merely contrived playacting by Defendants because Hairston had been discriminatorily pre-selected over Plaintiff.

68.     On or about May or June 2018, Defendants re-hired Roderick Hairston for the Head Coach position at Flowers H.S. Said selection of Hairston was a decision that had been

made through a process of pre-selection, without consideration of the merits, qualifications, or experience of the Plaintiff.

69.     In contrast to Plaintiff's 16-plus of experience and tenured status with the Defendants' school system, Coach Hairston had been suspended from coaching within the Defendants' district for the previous school year due to cheating. Further, Coach Hairston was not an APC-certified educator at the time of the promotion; meanwhile, Plaintiff has maintained such certification for over nine (9) years.

70.     In effect, Defendants had never intended on hiring Plaintiff as a Head Coach at Flowers H.S. Defendants instead colluded with one another to hire Walter Clark, a retired, lesser qualified, non-certified male coach, in lieu of Plaintiff, a certified, extremely qualified female coach, as a placeholder while Ron Hairston, another lesser qualified, non-certified male coach, completed his one-year coaching suspension.

71.     By hiring a *de facto* placeholder for the suspended male coach, Defendants implemented a discriminatory practice.

72.     Plaintiff has been denied promotions (passed over) on numerous occasions during the period of time that she has been employed by Defendants while uncertified males with less experience and credentials were promoted to head coaching positions.

73.     Plaintiff's training, qualifications, and experience for the Head Coach position was at least equal to those chosen for the positions and, in fact, were superior for the position in question as filled by Defendants on May or June of 2018.

74.     On June 19, 2018, Plaintiff filed a Charge of Discrimination with the EEOC for the federal government. On May 2, 2019, the EEOC issued a Notice of Right to Sue letter to

Plaintiff for the discrimination charge. This action is timely commenced within ninety (90) days of Ms. Stave's receipt of the Notice.

75.     Plaintiff was retaliated against as a result of her opposition and complaints regarding Defendants' hiring and selection process for head coaches.

76.     Defendants took action against Plaintiff in November of 2017 by refusing to promote her to the head coaching position in retaliation against her for exercise of her rights of free speech and association.

77.     Defendants took action further against Plaintiff in May or June 2018 by refusing to promote her to the head coaching position in retaliation against her for exercise of her rights.

78.     In refusing to hire Plaintiff as the Head Coach for Flowers H.S., Defendants were acting as Plaintiff's employers.

79.     Plaintiff was unlawfully subjected to discrimination in the workplace in violation of the provision of laws, statutes, policies, and constitutional provisions because of her gender (female). Plaintiff's rights under the provisions of laws, policies, and the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution have been violated.

80.     But for the fact that Plaintiff is a woman, she would not have been denied the promotions by the Defendants. Plaintiff's rights under Defendants policies, as well as the provisions of the Fourteenth Amendment to the U.S. Constitution have been violated.

81.     At the time that Defendants failed or refused to promote Plaintiff to the head coach position, and thereafter, she was satisfactorily performing all duties and responsibilities of her position as a physical educator and coach.

82.     Defendants engaged in policies and practices by and through the management of its school system, which evidence a pattern and practice of willful and intentional discrimination

against Plaintiff in retaliation of her protected speech. These policies and practices include, but are not limited to: (a) creating policies whereby employees who voiced concerns regarding discriminatory practices were subjected to greater scrutiny; and, (b) creating a policies whereby employees who voiced concerns regarding discriminatory practices were not promoted or were subjected to other adverse action, such as undesired assignments.

83.     Plaintiff's exercise of her rights to free speech regarding concerns of discrimination in the workplace was a significant motivating factor in Defendants' decision to refuse to promote Plaintiff.

84.     Plaintiff was never provided any reason(s) for Defendants' failure or refusal to select her for the Head Coach position at Flowers H.S., nor was she provided notice of any deficiencies or areas of improvement in order to obtain that promotion.

85.     Defendants knew or were recklessly indifferent to the fact that their conduct violated established federal laws.

86.     Plaintiff avers that there has been and still exists a pattern and practice of employment discrimination based on gender discrimination against females in the Defendants' school system in the appointment and promotion of females to head coaching positions in the Defendants' school system.

87.     Plaintiff has suffered irreparable injury, hardship, and harm as a result of Defendants' actions.

### COUNT I
### VIOLATION OF CIVIL RIGHTS
### 42 U.S.C. § 1983 DEPRIVATION OF EQUAL PROTECTION OF THE LAWS
### (Against All Defendants)

88.     Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs as if fully set forth herein.

89.     The Fourteenth Amendment to the United States Constitution, enforceable

pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its

jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.

90.     Defendants are subject to the equal protection guarantee.

91.     Under the Equal Protection Clause of the Fourteenth Amendment, discrimination

based on sex is presumptively unconstitutional and subject to heightened scrutiny.

92.     Discrimination on the basis of sex requires courts to apply intermediate scrutiny

when evaluating the constitutionality of the government's actions.

93.     While employed as a teacher and coach by Defendants, Ms. Staves was

discriminated against throughout the hiring process for the Head Coaching position at Flowers

H.S. because of her sex.

94.     The discrimination Ms. Staves endured was unwelcome. Indeed, Ms. Staves asked

the school's administration and staff to correct their behavior and reported incidents of

discriminatory behavior to Defendants to no avail.

95.     In fact, Defendants retaliated against Ms. Staves after she requested that

Defendants address their discriminatory hiring practices with respect to head coaches.

96.     The persistent discrimination that Ms. Staves endured was so severe or pervasive

that it led to her abandonment of coaching within the County, altogether.

97.     Defendants willfully ignored or was recklessly indifferent to the discrimination to

which Ms. Staves was subjected.

98.     In doing so, Defendants knowingly and intentionally selected a less qualified man

over a more qualified woman in violation of Ms. Staves's rights under the Fourteenth

Amendment.

17

99.    Defendants had actual and constructive knowledge of the discrimination from which Ms. Staves was suffering and did not take appropriate remedial action.

100.    Moreover, in some instances, supervisors and administrators, who had the ability to take tangible action on behalf of Ms. Staves, perpetrated the discriminatory behavior.

101.    As a result, Defendants discriminated against Ms. Staves with regard to her terms, conditions, or privileges of Ms. Staves's employment as a Head Coach because of her sex.

102.    Upon information and belief, male coaches at Prince George's County Public Schools are not subjected to the discrimination to which female coaches, like Ms. Staves, are subjected, nor are male coaches required to become APC certified to become Head Coaches.

103.    Upon information and belief, incidents of discriminatory hiring practices are left unaddressed by Defendants.

104.    Defendants deprived Ms. Staves of rights, remedies, privileges, and immunities guaranteed to every person, secured by 42 U.S.C. § 1983, including, but not limited to, the right guaranteed by the Fourteenth Amendment to the constitution of the United States to the equal protection of the laws.

105.    Defendants' officers and school administrators, including Mr. Rose and Mr. Brown, acted under pretense and color of state law and within the scope of their employment.

106.    Ms. Staves, a public-school teacher and coach, enjoyed a constitutionally protected right to be free from sex-based discrimination and mistreatment.

107.    Accordingly, Defendants are liable for the violation of Ms. Stave's Fourteenth Amendment rights under 42 U.S.C. § 1983, and Ms. Staves is entitled to declaratory and injunctive relief, as well as monetary damages.

108.    Defendants engaged in these acts maliciously or with reckless indifference to Plaintiff's due process rights, justifying awards of punitive damages to be determined at trial.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment:

a.      Injunctive relief as the Court deems appropriate;

b.      Awarding Plaintiff back pay and benefits with interest;

c.      Awarding damages in the amount of $10,000,000 in compensatory and punitive damages against Defendants;

d.      Awarding Plaintiff's attorney's fees and court costs incurred in pursuing this matter;

e.      Awarding further relief as the nature of this cause shall require.

## COUNT II
## DISCRIMINATION AND RETALIATION ON THE BASIS OF SEX
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
### (All Defendants)

109.    Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs, as if fully set forth herein.

110.    Title VII of the Civil Rights Act of 1964 provides that employers may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).

111.    Ms. Staves has a right under Title VII to compensation, terms, conditions, or privileges of employment, including a work environment free from discrimination or harassment because of her sex.

112.    While employed as a teacher and coach at Prince George's County Public Schools, Plaintiff has been the victim of unlawful discriminatory conduct in the workplace at the

hands of the Defendants. Plaintiff was unlawfully subjected to disparate treatment and suffered adverse employment actions by Defendants on the basis of her gender.

113.    The discrimination Ms. Staves endured was unwelcome. Indeed, Ms. Staves asked the school's administration and staff to correct their behavior and reported incidents of discriminatory behavior to Defendants to no avail.

114.    In fact, Defendants retaliated against Ms. Staves after she requested that Defendants address their discriminatory hiring practices with respect to head coaches.

115.    The persistent discrimination that Ms. Staves endured was so severe or pervasive that it led to her abandonment of coaching within Prince George's County, altogether.

116.    Defendants willfully ignored or were recklessly indifferent to the discriminatory work environment to which Ms. Staves was subjected.

117.    Defendants had actual and constructive knowledge of the discrimination from which Ms. Staves was suffering and did not take appropriate remedial action.

118.    Moreover, in some instances, Flowers H.S. Athletic Director, Principal, and supervisors, who had the ability to take tangible action on behalf of Ms. Staves, perpetrated the discriminatory behavior.

119.    In taking the foregoing actions described above, Defendants subjected Plaintiff to adverse employment action; materially and adversely altered the terms, conditions, and privileges of Plaintiff's employment and Plaintiff's future employment opportunities; foreclosed Plaintiff from obtaining comparable future employment; and damaged Plaintiff's professional reputation and standing in the community of coaches in Prince George's County.

120.    As a result, Defendants violated Ms. Stave's rights protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) and (2).

121.    Defendants' violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964 caused her to suffer past and future pecuniary loss, loss of employment and future employment opportunities, loss of wages and benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment:

a.      Injunctive relief as the Court deems appropriate;

b.      Awarding Plaintiff back pay and benefits with interest;

c.      Awarding damages in the amount of $10,000,000 in compensatory and punitive damages against Defendants;

d.      Awarding Plaintiff's attorney's fees and court costs incurred in pursuing this matter;

e.      Awarding further relief as the nature of this cause shall require.

<u>**COUNT III**</u>
**DISCRIMINATION AND RETALIATION ON THE BASIS OF SEX**
**IN VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972**
**(All Defendants)**

122.    Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs, as if fully set forth herein.

123.    Title IX of the Education Amendments of 1972 provides that "[n]o person in the United States shall, on the basis of sex, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a).

124.    In addition, pursuant to Title IX, [n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination in employment, or recruitment, consideration, or selection therefor, whether full-time or part-time,

under any education program or activity operated by a recipient which receives Federal financial assistance." 34 C.F.R. § 106.51(a)(1).

125.    Upon information and belief, Defendants are an educational institution that receives federal financial assistance for their educational activities and were therefore covered under Title IX.

126.    Ms. Staves has a right under Title IX to compensation, terms, conditions, or privileges of employment, including a work environment free from discrimination or harassment based on her sex.

127.    While employed as a teacher and coach at Prince George's County Public Schools, Plaintiff has been the victim of unlawful discriminatory conduct in the workplace at the hands of the Defendants. Plaintiff was unlawfully subjected to disparate treatment and suffered adverse employment actions by Defendants on the basis of her gender.

128.    The discrimination Ms. Staves endured was unwelcome. Indeed, Ms. Staves asked the school's administration and staff to correct their behavior and reported incidents of discriminatory behavior to Defendants to no avail.

129.    In fact, Defendants retaliated against Ms. Staves after she requested that Defendants address their discriminatory hiring practices with respect to head coaches.

130.    The persistent discrimination that Ms. Staves endured was so severe or pervasive that it led to her abandonment of coaching within Prince George's County, altogether.

131.    Defendants willfully ignored or were recklessly indifferent to the discriminatory work environment to which Ms. Staves was subjected.

132.    Defendants had actual and constructive knowledge of the discrimination from which Ms. Staves was suffering and did not take appropriate remedial action.

133.    Moreover, in some instances, Flowers H.S. Athletic Director, Principal, and supervisors, who had the ability to take tangible action on behalf of Ms. Staves, perpetrated the discriminatory behavior.

134.    In taking the foregoing actions described above, Defendants subjected Plaintiff to adverse employment action; materially and adversely altered the terms, conditions, and privileges of Plaintiff's employment and Plaintiff's future employment opportunities; foreclosed Plaintiff from obtaining comparable future employment; and damaged Plaintiff's professional reputation and standing in the community of coaches in Prince George's County.

135.    As a result, Defendants violated Ms. Stave's rights protected by Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

136.    Defendants' violation of Plaintiff's rights under Title IX of the Education Amendments of 1972 caused her to suffer past and future pecuniary loss, loss of employment and future employment opportunities, loss of wages and benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment:

a.    Injunctive relief as the Court deems appropriate;

b.    Awarding Plaintiff back pay and benefits with interest;

c.    Awarding damages in the amount of $10,000,000 in compensatory and punitive damages against Defendants;

d.    Awarding Plaintiff's attorney's fees and court costs incurred in pursuing this matter;

e.    Awarding further relief as the nature of this cause shall require.

## <u>COUNT IV</u>
## DISCRIMINATION ON THE BASIS OF SEX
## IN VIOLATION OF THE MARYLAND FEPA
## (All Defendants)

137.    Plaintiff hereby incorporates by reference the allegations contained in the previous paragraphs, as if fully set forth herein.

138.    The Maryland FEPA, § 20-606(a)(1)(i), provides that employers may not "discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of . . . sex." Md. Code Ann., State Gov't § 20-606.

139.    Ms. Staves has a right under the Maryland FEPA to compensation, terms, conditions, or privileges of employment, including a work environment free from discrimination or harassment based on her sex.

140.    While employed as a teacher and coach at Prince George's County Public Schools, Plaintiff has been the victim of unlawful discriminatory conduct in the workplace at the hands of the Defendants. Plaintiff was unlawfully subjected to disparate treatment and suffered adverse employment actions by Defendants on the basis of her gender.

141.    The discrimination Ms. Staves endured was unwelcome. Indeed, Ms. Staves asked the school's administration and staff to correct their behavior and reported incidents of discriminatory behavior to Defendants to no avail.

142.    In fact, Defendants retaliated against Ms. Staves after she requested that Defendants address their discriminatory hiring practices with respect to head coaches.

143.    The persistent discrimination that Ms. Staves endured was so severe or pervasive that it led to her abandonment of coaching within Prince George's County, altogether.

144.    Defendants willfully ignored or were recklessly indifferent to the discriminatory work environment to which Ms. Staves was subjected.

145.    Defendants had actual and constructive knowledge of the discrimination from which Ms. Staves was suffering and did not take appropriate remedial action.

146.    Moreover, in some instances, Flowers H.S. Athletic Director, Principal, and supervisors, who had the ability to take tangible action on behalf of Ms. Staves, perpetrated the discriminatory behavior.

147.    In taking the foregoing actions described above, Defendants subjected Plaintiff to adverse employment action; materially and adversely altered the terms, conditions, and privileges of Plaintiff's employment and Plaintiff's future employment opportunities; foreclosed Plaintiff from obtaining comparable future employment; and damaged Plaintiff's professional reputation and standing in the community of coaches in Prince George's County.

148.    As a result, Defendants discriminated against Ms. Staves with regard to her terms, conditions, or privileges of Ms. Stave's employment because of her sex.

149.    Accordingly, Defendants violated Ms. Stave's rights protected by the Maryland FEPA, Md. Code Ann. State Gov't § 20-606(a)(1)(i).

150.    Defendants' violation of Plaintiff's rights under the Maryland FEPA caused her to suffer past and future pecuniary loss, loss of employment and future employment opportunities, loss of wages and benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment:

a.    Injunctive relief as the Court deems appropriate;

b.    Awarding Plaintiff back pay and benefits with interest;

     c.     Awarding damages in the amount of $10,000,000 in compensatory and punitive

damages against Defendants;

     d.     Awarding Plaintiff's attorney's fees and court costs incurred in pursuing this

matter;

     e.     Awarding further relief as the nature of this cause shall require.

**COUNT V**
**DISCRIMINATION ON THE BASIS OF SEX**
**IN VIOLATION OF PRINCE GEORGE'S COUNTY CODE**
**(All Defendants)**

151.     Plaintiff hereby incorporates by reference the allegations contained in the

previous paragraphs, as if fully set forth herein.

152.     The County Code of Prince George's County, § 2-222 provides that employers

may not "act against any person with respect to compensation or other terms and conditions of

employment, or limit, segregate, classify, or assign employees because of discrimination." Prince

George's County, Md., Code, § 2-222.

153.     The County Code of Prince George's County, § 2-186(a)(3) defines

discrimination as "acting, or failing to act, or unduly delaying any action regarding any person

because of . . . sex . . . in such a way that such person is adversely affected in . . . employment."

Prince George's County, Md., Code, § 2-186(a)(3).

154.     Ms. Staves has a right under §§ 2-186(a)(3) and 2-222 of the County Code of

Prince George's County to compensation, terms, conditions, or privileges of employment,

including a non-hostile work environment, free from discrimination or harassment because of her

sex.

155.     While employed as a teacher and coach at Prince George's County Public

Schools, Plaintiff has been the victim of unlawful discriminatory conduct in the workplace at the

26

hands of the Defendants. Plaintiff was unlawfully subjected to disparate treatment and suffered adverse employment actions by Defendants on the basis of her gender.

156.    The discrimination Ms. Staves endured was unwelcome. Indeed, Ms. Staves asked the school's administration and staff to correct their behavior and reported incidents of discriminatory behavior to Defendants to no avail.

157.    In fact, Defendants retaliated against Ms. Staves after she requested that Defendants address their discriminatory hiring practices with respect to head coaches.

158.    The persistent discrimination that Ms. Staves endured was so severe or pervasive that it led to her abandonment of coaching within Prince George's County, altogether.

159.    Defendants willfully ignored or were recklessly indifferent to the discriminatory work environment to which Ms. Staves was subjected.

160.    Defendants had actual and constructive knowledge of the discrimination from which Ms. Staves was suffering and did not take appropriate remedial action.

161.    Moreover, in some instances, Flowers H.S. Athletic Director, Principal, and supervisors, who had the ability to take tangible action on behalf of Ms. Staves, perpetrated the discriminatory behavior.

162.    In taking the foregoing actions described above, Defendants subjected Plaintiff to adverse employment action; materially and adversely altered the terms, conditions, and privileges of Plaintiff's employment and Plaintiff's future employment opportunities; foreclosed Plaintiff from obtaining comparable future employment; and damaged Plaintiff's professional reputation and standing in the community of coaches in Prince George's County.

163.    As a result, Defendants discriminated against Ms. Staves with regard to her terms, conditions, or privileges of Ms. Stave's employment because of her sex.

164.     Accordingly, Defendants violated Ms. Stave's rights protected by the Prince George's County Code, Division 12, §§ 2-186(a)(3) and 2-222.

165.     Defendants' violation of Plaintiff's rights under the Prince George's County Code caused her to suffer past and future pecuniary loss, loss of employment and future employment opportunities, loss of wages and benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment:

a.     Injunctive relief as the Court deems appropriate;

b.     Awarding Plaintiff back pay and benefits with interest;

c.     Awarding damages in the amount of $10,000,000 in compensatory and punitive damages against Defendants;

d.     Awarding Plaintiff's attorney's fees and court costs incurred in pursuing this matter;

e.     Awarding further relief as the nature of this cause shall require.

## JURY TRIAL PRAYER

Plaintiff hereby demands a trial by jury on all such eligible claims.

Dated: August 5, 2019

Respectfully Submitted,

_/S/ Darrell Chambers_
Darrell Chambers [980872]
The Chambers Firm, LLC
8403 Colesville Road Suite 1100
Silver Spring, MD 20910
(240) 638-2831
darrell@chambersfirmDCMD.com

_Counsel for Plaintiff Makia Staves_