IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MAKIA STAVES, <br><br> Plaintiff, <br><br> v. <br><br> PRINCE GEORGE'S COUNTY BOARD OF EDUCATION, <br><br> Defendant. | Civil Action No. 19-cv-02262-LKG <br><br> Dated: March 27, 2023 |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

In the remaining claims in this employment discrimination action, Plaintiff, Makia Staves, alleges that Defendant the Board of Education of Prince George's County (the "Board") discriminated against her upon the basis of sex, by failing to hire her for certain coaching positions, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e), *et seq.* ("Title VII"), Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), the Maryland Fair Employment Practices Act, Md. Code, § 20-606(a)(1)(i) of the State Government Article, for unlawful employment practices ("MFEPA"), and the Prince George's County Code, Md., Code, §§ 2-186(a)(3), 2-222 ("County Code"). *See generally*, ECF No. 1. The parties have filed cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56 on the issue of whether Plaintiff has established a *prima facie* case of sex-based discrimination under Title VII, Title IX, the MFEPA, and the Prince George's County Code. *See* ECF No. 48-1; ECF No. 66.[1]

---

[1] Plaintiff has voluntarily dismissed Defendants P.G. County Council, Angela Alsobrooks, Prince George's County Public Schools and Monica Goldson, the Section 1983 claim, and the retaliation claims in this case. ECF Nos. 10, 79. And so, the remaining claims before the Court are Plaintiff's sex discrimination claims against Defendant the Board of Education pursuant to Title VII, Title IX, the MFEPA, and the Prince George's County Code. *See* ECF No. 65 n. 1; ECF No. 66 at 1-2; ECF No. 72 at 2.

For the reasons that follow, the Court: (1) **GRANTS** Defendants' motion for summary judgment; (2) **DENIES** Plaintiff's cross-motion for summary judgment; and (3) **DISMISSES** the complaint.

## II.  FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.  Factual Background

In this employment discrimination action, Plaintiff, Makia Staves, alleges that the Board discriminated against her upon the basis of sex, in violation of Title VII, Title IX, and state and county law, by failing to hire her for certain coaching positions. *See generally* ECF No. 1. Specifically, Plaintiff alleges that, during her employment with Prince George's County Public Schools ("PGCPS"), she "endured systematic discrimination based on her gender." *Id.* at ¶ 5. Plaintiff also alleges that, on or about November of 2017, and again in May of 2018, she was "passed over" for a Head Girls Basketball Coach position at C.H. Flowers High School ("Flowers") in PGCPS because of her gender, and that PGCPS selected a "clearly and indisputably less-qualified and less-credentialed man" instead of her. *Id.* As relief, Plaintiff seeks, among other things, to recover monetary damages from Defendants. *Id.* at 28.

<u>Plaintiff's Relevant Employment History</u>

As background, Plaintiff is a Black woman, and she is the Athletic Director at Friendly High School, which is a PGCP school. *Id.* at ¶ 24; Staves Dep. 21:2-4, ECF No. 48-2. Defendant, the Board, is the official educational policy-making body for PGCPS. *See* https://www.pgcps.org/offices/board-of-education/about.

From 2006 to 2019, Plaintiff was employed by the Board as a Physical Education Teacher at Francis T. Evans Elementary School. Staves Dep. 25:15-26:21, ECF No. 48-2. In addition to her teaching role at the school, Plaintiff served as the Girls Basketball Coach.

From 2006 to 2013, Plaintiff was the Head Junior Varsity Girls Basketball Coach at Flowers. *Id.* at 40:9-42:16. Thereafter, from 2013 to 2014, Plaintiff was the Assistant Varsity

---

[2] The facts recited in this Memorandum Opinion and Order are taken from the complaint, Defendant's motion for summary judgment, the memorandum in support thereof and the exhibits attached thereto, and Plaintiff's cross-motion for summary judgment, memorandum in support thereof and the exhibits attached thereto. ECF Nos. 1, 48, 66. Unless otherwise stated, the facts are undisputed.

Girls Basketball Coach at Flowers. *Id.* at 42:5-48:16.

During the 2014-2015 school year, Plaintiff coached Girls Basketball at Riverdale Baptist, a private school. *Id.* at 50:7-13, 53:15-17, 204:8-19. In 2016, Plaintiff returned to coach within PGCPS, and she became the Head Varsity Girls Basketball Coach at Bowie High School, which is also a PGCP school. *Id.* at 57:1-21. Plaintiff remained in this position until 2019. *Id.*

In August of 2019, Plaintiff was promoted to Athletic Director at Friendly High School, *id.* at 21:2-4, 29:19-22, and she resigned from her position as Head Varsity Girls Basketball Coach at Bowie High School, *id.* at 58:1-15.

<u>The PGCPS Coach Selection Process</u>

It is undisputed that the selection of coaches for high school athletics within PGCPS is governed by the Interscholastic Athletics Handbook ("Handbook"). ECF No. 48-3. Pursuant to the Handbook, the first step of the process for selecting a coach is for Athletic Directors at every school to identify and submit coaching vacancies to the Director and/or Supervisor of Interscholastic Athletics. *Id.* at 3. The Director and/or Supervisor of Interscholastic Athletics next submits a request to post coaching vacancies to Human Resources. *Id.*

After the vacancies are posted and the posting closes, the Principal of the school will receive a list of eligible candidates and resumes from Human Resources. *Id.* Interviews are then scheduled and forms, including an applicant evaluation form, an approval sheet of recommended candidates, and coaches request form, are utilized by the interview panel. *Id.*

The Handbook requires that interviews be conducted by a panel, to include at a minimum the Principal or his/her designee, the Athletic Director, and a school administrator. *Id.* Interviews must also be conducted using a uniform interview process as established in the procedures for the employment of athletic coaches. *Id.*

At the conclusion of the interviews, the Athletic Director submits all required forms to the Director of Athletics or his/her designee. *Id.* The Director of Athletics or his/her designee will then submit the packet to Human Resources, and Human Resources will contact the highest scoring candidate and offer the coaching position. *Id.* at 3-4.

The 2017 And 2018 Vacancies At Flowers

The parties disagree about whether the aforementioned selection process was followed with regard to the 2017 and 2018 Girls Varsity Head Basketball Coaching vacancies at Flowers. *See* ECF No. 65-1 at 3-5; ECF No. 66-1 at 3-5.

But, it is undisputed that, on September 13, 2017, Human Resources posted a vacancy for the position of Head Varsity Girls Basketball Coach at Flowers, and that this posting closed on October 3, 2017. ECF No. 48-4. It is also undisputed that, on November 1, 2017, Plaintiff was interviewed for this position. *See* ECF No. 48-5 at 5, 10, 13, 15.

The parties disagree, however, about whether Plaintiff's interview was meaningful. In this regard, Plaintiff contends that her interview was a sham interview, because a male candidate for this position, Roderick Hairston ("Coach Hairston"), had been given the position before Plaintiff had her interview. ECF No. 65, at 4-5; ECF No. 66-1, at 4-5. Specifically, Plaintiff alleges that she learned that the position was vacant in July of 2017, prior to the posting of the position by Human Resources, and that she emailed the school's Principal, Gorman Brown ("Principal Brown") and the Athletic Director, Carlyle Rose ("Athletic Director Rose") to express an interest in the position on July 25, 2017. ECF No. 1 at ¶¶ 47, 48; *see also* ECF No. 66-5.

Plaintiff further alleges that, on October 30, 2017, she emailed the PGCPS Coordinating Supervisor, Office of Interscholastic Athletics, Earl Hawkins ("Supervisor Hawkins"), and the PGCPS Assistant Supervisor of Athletics, O'Shay Watson, to inquire about the status of her application, because she did not receive a response from Principal Brown or Athletic Director Rose. ECF No. 1 at ¶ 50; ECF No. 66-6. And so, Plaintiff contends that she was extended an opportunity to interview only after making these inquiries. ECF No. 1 at ¶ 50; Staves Dep. 109:6–113:18, ECF No. 66-7.

It is undisputed that the panel for Plaintiff's interview consisted of Principal Brown, Athletic Director Rose, a Resident Principal and two Assistant Principals. ECF No. 48-5 at 2, 3. It is also undisputed that Plaintiff was the second highest scoring candidate for the coaching position, and that the position was offered to the highest scoring candidate, Coach Hairston. ECF No. 48-1 at 4; ECF No. 65 at 5; ECF No. 66 at 5; ECF No. 72 at 3-5. But Plaintiff contends that her score was meaningless, because other candidates for the position received

4

varying scores from the panel members, while all evaluators gave Plaintiff a score of 3 in all of the evaluation categories. ECF No. 65 at 5; ECF No. 66 at 5.

Nonetheless, it is undisputed that, on October 30, 2017, Supervisor Hawkins informed Coach Hairston that he was suspended from coaching during the 2017-2018 school year, due to violating Maryland Public Secondary Schools Athletic Association ("MPSSAA") rules for conducting several out-of-season practice sessions. ECF No. 48-6. Coach Hairston unsuccessfully appealed this decision to the MPSSA.[3] *See* ECF Nos. 48-7, 48-8.

On March 20, 2018, at the conclusion of the 2017-2018 season, the position of Head Varsity Girls Basketball Coach at Flowers for the 2018-2019 school year was again posted. ECF No. 48-11. On May 8, 2018, Plaintiff interviewed for the position. *See* ECF No. 48-12 at 5-24.

It is undisputed that Plaintiff was the second highest scoring candidate for the coaching position, and that the position was offered to the highest scoring candidate, Coach Hairston. ECF No. 48-12 at 3; ECF No. 65 at 5; ECF No. 66 at 5. But Plaintiff contends that her interview was a sham interview, because the search committee pre-determined that Coach Hairston would be selected for the vacancy and colluded to give Plaintiff a score that would effectuate that result. ECF No. 65 at 9-10; ECF No. 66 at 9-10. Plaintiff also contends that her score was unfair, because Principal Brown gave her a "Qualified (3)" in the Rules and Regulations category, although Plaintiff answered all the questions in that category correctly and had not been suspended for breaking the rules. ECF No. 65 at 9. In comparison, Plaintiff also contends that three of the four search committee members rated Coach Hairston "Exceptionally Qualified (5)" and "Highly Qualified (4)" under the Rules and Regulations category even though the committee knew that he had violated the MPSSA rules and received a suspension that was upheld on appeal. *Id*. at 9.

Given this, Plaintiff alleges in this action that she was twice "passed over" for the Head Girls Basketball Coach position at Flowers because of her gender. ECF No. 1 at ¶ 5. And so,

---

[3] The parties disagree about whether Supervisor Hawkins or Principal Brown then appealed the MPSSAA decision to the MPSSAA Appeals Committee. *See* ECF No. 48-1, at 4; ECF No. 65, at 7; ECF No. 66-1, at 7. But, it is undisputed that on November 14, 2017, the MPSSAA Appeals Committee upheld the penalty imposed against Coach Hairston and denied the appeal.

she seeks to recover monetary damages and other relief from the Board.  *Id.* at 28.

### B. Procedural Background

Plaintiff commenced this action on August 5, 2019.  ECF No. 1.  On November 5, 2021, Defendant filed a motion for summary judgment and a memorandum in support thereof.  ECF Nos. 48 and 48-1.

On May 27, 2022, Plaintiff filed a response in opposition to Defendant's motion, ECF No. 65, and a cross-motion for summary judgment and memorandum in support thereof, ECF Nos. 66, 66-1.  On July 8, 2022, Defendant filed a reply in support of their motion for summary judgment and a response in opposition to Plaintiff's cross-motion for summary judgment.  ECF No. 72.  On September 12, 2022, Plaintiff filed a reply in support of her cross-motion for summary judgment.  ECF No. 75.

These motions having been fully briefed, the Court resolves the pending motions.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993).  But, a party who bears the burden of proof on a

6

particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

When faced with cross-motions for summary judgment, the Court must review each motion separately on its own merits "to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n. 4 (1st Cir.1997) (citation and internal punctuation omitted). When considering each individual motion, the Court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing that motion. *See Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir.1996).

### B. Title VII Claims

Title VII prohibits employment discrimination based on race, color, religion, sex, and national origin. *See* 42 U.S.C. § 2000e. There are two methods for proving intentional discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

For the first method, "an employee may utilize ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Rhoads v. F.D.I.C.*, 257 F.3d 373 (4th Cir. 2001) (citation omitted). To overcome a summary judgment motion based upon this method of proof, a plaintiff "must produce direct evidence of a stated

7

purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Id.* at 391 (citation omitted) (brackets existing).  And so, a plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Id.* at 391-92 (citation omitted).

If direct or indirect evidence of intentional discrimination is lacking, a plaintiff may proceed under *McDonnell Douglas*.  *See Tuck v. Henkel Corp.*, 973 F.2d 371, 375 (4th Cir. 1992).  Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case of discrimination.  *See McDonnell Douglas Corp.*, 411 U.S. at 802.

Specifically relevant to this discrimination dispute, a plaintiff may establish a *prima facie* case of sex discrimination for failure to hire or to promote by showing: "(1) she is a member of a protected group; (2) she applied for the position in question; (3) she was qualified for that position; and (4) defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination."  *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005) (citing *Bryant v. Aiken Reg. Med. Ctrs., Inc.*, 333 F.3d 536, 544–45 (4th Cir. 2003).  The United States Court of Appeals for the Fourth Circuit has explained that courts should apply this analysis for race discrimination claims under Title VII to claims of sex discrimination.  *See Harris v. Mayor and City Council of Baltimore*, 429 F. App'x 195 (4th Cir. 2011).

If a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  Should the defendant succeed in doing so, that showing will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case.  *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10).  The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253 (citing *McDonnell Douglas Corp.*, 411 U.S. at 804).  And so, "[t]he plaintiff always bears the ultimate

burden of proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

### C.     Title IX Claims

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  The Fourth Circuit has held that the *McDonnell Douglas* framework applies to discrimination claims brought under Title IX.  *See Jennings v. Univ. of North Carolina*, 484 F.3d 686, 695 (4th Cir. 2007) ("We look to case law interpreting Title VII of the Civil Rights Act of 1964 for guidance in evaluating a claim brought under Title IX").

### D.     The MFEPA And Sections 2-186(a)(6) And 2-222 Claims[4]

Section 20-606(a) of the Maryland Fair Employment Practices Act provides that "[a]n employer may not . . . fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of . . . the individual's . . . sex [or] age." Md. Code State Gov't § 20-606(a).  Section 20-606(f) of the MFEPA also provides that "[a]n employer may not discriminate or retaliate against any of its employees or applicants for employment . . . because the individual has . . . opposed any practice prohibited by [Section 20- 606]." *Id.* § 20-606(f).  Section 20-607 of the MFEPA prohibits discrimination in compensation and provides that:

> For purposes of this subtitle, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subtitle, when: (1) a discriminatory compensation decision or other practice is adopted; (2) an individual becomes subject to a discriminatory compensation decision or other practice; or (3) an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting wholly or partly from the discriminatory compensation decision or other practice.

*Id.* § 20-607(a).

---

[4] In Count V of the complaint, Plaintiff alleges discrimination on the basis of sex in violation of County Code § 2-186(a)(3), which defines the term "discrimination" under the County Code.  That provision is now codified under County Code § 2-186(a)(6).

9

In addition, Section 2-186(a)(6) of the Prince George's County Code defines discrimination as "acting, or failing to act, or unduly delaying any action regarding any person because of . . . sex . . . or gender identity, in such a way that such person is adversely affected in . . . employment[.]" Prince George's County, Md., Code § 2–186(a)(6). Lastly, Section 2-222 of the Prince George's County Code provides that "[n]o employer in [Prince George's] County shall discharge or refuse to hire any person, or act against any person with respect to compensation or other terms and conditions of employment, or limit, segregate, classify, or assign employees because of discrimination." *Id.* § 2–222. The *McDonnell Douglas* framework applies to discrimination claims under MFEPA and the Prince George's County Code. *See Finkle v. Howard Cnty.*, 12 F. Supp. 3d 780, 784 (D. Md. 2014) ("FEPA is the state analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII."); *see also Bryan v. Prince George's Cty., Md.*, 2011 WL 2650759, at *8 (D. Md. July 5, 2011) ("[S]ection 2-222 of the Prince George's County Code largely tracks the language of 42. U.S.C. § 2000e-2.").

## IV.   LEGAL ANALYSIS

The parties have filed cross-motions for summary judgment on the issue of whether Plaintiff can establish a *prima facie* case of discrimination based on sex under Title VII, Title IX, the MFEPA, and the Prince George's County Code. *See generally*, ECF Nos. 48, 48-1, 66 and 66-1.

In this regard, the Board argues that the undisputed material facts in this case show that Plaintiff cannot prevail on her sex discrimination claims because: (1) Plaintiff advances no evidence to support her sex discrimination claims, or to show that her non-selection for the Head Varsity Girls Basketball Coach position at Flowers was due to her sex; (2) the evidence also shows that the Board had a legitimate, nondiscriminatory reason for not hiring Plaintiff for the Head Varsity Girls Basketball Coach position at Flowers; and (3) Plaintiff cannot show that the Board's reason was a pretext for sex discrimination. ECF No. 48 at 17-20. And so, the Board requests that the Court enter judgment summarily in its favor on Plaintiff's sex-based discrimination claims. *Id.* at 20.

Plaintiff counters in her response in opposition and cross-motion that undisputed material facts show that she can establish a *prima facie* case of sex discrimination, because the evidence shows that she was not hired for Head Varsity Girls Basketball Coach position at Flowers due to

the Board's intentional discrimination against her on the basis of sex. ECF No. 65 at 12-17; ECF No. 66 at 12-17. And so, Plaintiff requests that the Court deny the Board's motion for summary judgment and enter judgment summarily in her favor on these claims. *Id.*

For the reasons set forth below, the undisputed material facts in this matter show that Plaintiff cannot establish a *prima facie* case of sex discrimination under Title VII, Title IX, the MFEPA and the Prince George's County Code. And so, the Court: (1) **GRANTS** Defendants' motion for summary judgment; (2) **DENIES** Plaintiff's cross-motion for summary judgment; and (3) **DISMISSES** the complaint. *See* Fed. R. Civ. P. 56.

### A.    Plaintiff Cannot Show A *Prima Facie* Case Of Sex-Based Discrimination

The undisputed material facts in this case show that Plaintiff cannot establish a *prima facie* case of sex discrimination to prevail on her remaining discrimination claims challenging her non-selection for the Head Varsity Girls Basketball Coach position at Flowers. To establish a *prima facie* case of sex discrimination, based on a failure to hire or to promote, under Title VII, Plaintiff must show that: "(1) she is a member of a protected group; (2) she applied for the position in question; (3) she was qualified for that position; and (4) defendants rejected her application under circumstances that give rise to an inference of unlawful discrimination." *Anderson*, 406 F.3d at 268 (citing *Bryant*, 333 F.3d at 544–45). This framework also applies to Plaintiff's sex discrimination claims brought under Title IX, the MFEPA and the Prince George's County Code. *See Jennings*, 484 F.3d at 695 ("We look to case law interpreting Title VII of the Civil Rights Act of 1964 for guidance in evaluating a claim brought under Title IX); *Finkle*, 12 F. Supp. 3d at 784 ("FEPA is the state analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII."); *see also Bryan*, 2011 WL 2650759, at *8 ("[S]ection 2-222 of the Prince George's County Code largely tracks the language of 42. U.S.C. § 2000e-2."). And so, to prevail on her sex discrimination claim here, Plaintiff must show, among other things, that the Board rejected her application under circumstances that give rise to an inference of unlawful discrimination. *See id.*

The Court agrees with the Board that Plaintiff cannot make such a showing in this case. Plaintiff advances no evidence to show that the Board decided not to select her for the Head Varsity Girls Basketball Coach position at Flowers under circumstances that give rise to an inference of unlawful discrimination based upon her gender.

In this regard, it is undisputed that Plaintiff interviewed for the Head Varsity Girls Basketball Coach position at Flowers on two occasions, and that she was the second highest scoring candidate for the coaching position each time. *See* ECF No. 48-5 at 2, 5, 10, 13, 15; ECF No. 48-12 at 3, 5-24. It is also undisputed that the position was ultimately offered to the highest scoring candidate, Coach Hairston, who is male, on both occasions. ECF No. 48-5 at 2; ECF No. 48-12 at 3.

While Plaintiff contends in this action that the Board discriminated against her upon the basis of sex, because both of her interviews for the position were a sham, she points to no evidence to show that the interviews were not meaningful or unfair due to her gender. ECF No. 65, at 4-5; ECF No. 66-1, at 4-5. Notably, with regard to the 2017 non-selection, Plaintiff contends that she was extended an opportunity for her first interview for the coaching position only after making inquiries with school officials about the status of her application. ECF No. 1 at ¶ 50; ECF No. 65 at 5; ECF No. 66 at 5. Plaintiff also contends that her score following this interview was meaningless, because, unlike other candidates, she received the same score in each of the evaluation categories by the four different evaluators. ECF No. 65 at 5; ECF No. 66 at 5. But Plaintiff does not state the gender of the other candidates that she references to explain how this evidence supports her sex discrimination claims. *See id.*

With regard to Plaintiff's second non-selection in 2018, Plaintiff contends that her May 8, 2018, interview was also a sham, because the search committee pre-determined that Coach Hairston would be selected for the vacancy and colluded to give her a score that would effectuate that result. ECF No. 65 at 9; ECF No. 66 at 9. But again, Plaintiff points to no evidence to show that this alleged conduct was due to her gender. *See id.* Nor does Plaintiff point to evidence to show that Coach Hairston was selected for the coaching position because he was male. *See id.* Given this, Plaintiff identifies no evidence in this case to show that her non-selections in 2017 and 2018 were due to any discriminatory animus on the part of the Board.

In short, the undisputed material facts in this case make clear that Plaintiff cannot show that she was not selected for the Head Varsity Girls Basketball Coach position at Flowers under circumstances giving rise to an inference of discrimination on the basis of her sex. Given this, Plaintiff cannot prevail on her sex discrimination claims under Title VII, Title IX, the MFEPA and the Prince George's County Code. *Anderson*, 406 F.3d at 268 (citing *Bryant*, 333 F.3d at

544–45); *Jennings*, 484 F.3d at 695; *Finkle*, 12 F. Supp. 3d at 784; *Bryan*, 2011 WL 2650759, at *8. And so, the Court must GRANT the Board's motion for summary judgment and DENY Plaintiff's cross-motion for summary judgment on these discrimination claims. *See* Fed. R. Civ. P. 56.

Because the Court concludes that the undisputed material facts show that Plaintiff cannot establish that she was not selected for the subject coaching position under circumstances that give rise to an inference of unlawful discrimination, the Court does not reach the issue of whether the Board had a legitimate, non-discriminatory reason for not selecting Plaintiff for the Head Varsity Girls Basketball Coach position at Flowers. *See McDonnell Douglas Corp.*, 411 U.S. at 802-05.

## V. CONCLUSION

In sum, the undisputed material facts in this matter show that Plaintiff cannot establish a *prima facie* case of sex discrimination under Title VII, Title IX, the MFEPA and the Prince George's County Code. And so, the Court:

1. **GRANTS** Defendants' motion for summary judgment;

2. **DENIES** Plaintiff's cross-motion for summary judgment; and

3. **DISMISSES** the complaint.

The Clerk is directed to enter judgment accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge